[PHILADELPHIA, JANUARY, 1830.]

## HOPKINS *against* CONRAD and LANCASTER.

### IN ERROR.

Where a person who is erecting a building, after having procured from a lumber merchant a certain quantity of lumber, becomes the owner of a note, payable in lumber, by the same lumber merchant, to a greater amount than the lumber furnished, and afterwards, more is furnished, exceeding in price the amount of the note, and a claim is filed under the mechanics' lien law, for the whole, the claim is *pro tanto*, extinguished by the note; and the builder and lumber merchant cannot agree afterwards to apply the note to the credit of another building, subsequently erected by the same person, against which the lumber merchant has neglected to file a claim in due time, to the prejudice of a third person, who has purchased the first house, before the commencement of the second.

One who has conveyed a house with special warranty, and against whom, as the reputed owner, a claim is afterwards filed under the mechanics' lien law, is not a competent witness for his grantee, the real defendant, on the trial of a *Scire Facias* upon the claim.

WRIT of error to the District Court for the city and county of *Philadelphia*, in a *Scire Facias* upon a claim filed by the defendants in error, under the mechanics' lien law. The case was this:—

On the 1st of *July*, 1819, *Conrad* and *Lancaster* filed in the office of the prothonotary of the District Court for the city and county of *Philadelphia*, a claim in the following words, viz.—

"*Conrad* and *Lancaster* claim, in their own right, the sum of three hundred and forty-five dollars and thirty-four cents against *Harker* and *Thorn*, the owners, or reputed owners of a three storied brick house, situate on the south side of *Walnut* street, between *Eleventh* and *Twelfth* streets, in the city of *Philadelphia*, and against any other person or persons, owners or possessors of the said building, or otherwise, for lumber found and provided in and about the said building.

"*Conrad* and *Lancaster*.

"*Philadelphia*, 6th mo. 30th, 1819."

On this claim, a *Scire Facias* issued to *December* Term, 1820, to which the sheriff made the following return:—" Made known to *J. R. Hopkins*, terretenant." *J. R. Hopkins* appeared, and pleaded, *non assumpsit*, and payment with leave, &c. The plaintiffs replied, *non solvit* and issues.

The cause was tried on the 19th of *March*, 1827, when a verdict was returned in favour of the plaintiffs for three hundred and forty dollars and forty-seven cents.

On the trial, the plaintiffs gave in evidence their book of original entries, containing charges against *Harker* and *Thorn*, for lumber; the first of which was on the 23d of *June*, 1818.

(Hopkins *v.* Conrad and Lancaster.)

For the purpose of showing at what time the house was finished, the plaintiffs examined several witnesses, one of whom, a carpenter, swore, that he got lumber after the 15th of *January,* 1819, for shelving the vault: That he finished the other work between the 1st and 15th of *January:* That he hung the mahogany doors, put down carpet strips, and planed the floors after the 1st of *January,* 1819.

The defendant gave in evidence a deed for the premises from *John Jackson* and others to *Abia B. Thorn,* dated the 1st of *November,* 1817; a deed with special warranty from *Abia B. Thorn* to *Howell Hopkins,* dated the 15th of *May,* 1819, and a deed from *Howell Hopkins* to *Joseph R. Hopkins,* dated the 21st of *June,* 1819. He also produced several witnesses, who swore, that the house was finished about *Christmas,* 1818.

The defendant then offered the evidence of *Abia B. Thorn,* taken under a commission to *New York.* The evidence was objected to on the ground, that the witness was incompetent from interest. The court rejected the evidence, and at the request of the defendant's counsel, sealed a bill of exceptions.

*Moses Lancaster,* who was examined as a witness for the defendant, testified, that he sold a house to *Conrad* and *Lancaster,* and received from them notes, or due bills, payable in lumber to him or his order: That on the 11th of *July,* 1818, he transferred one of these notes, dated the 18th of *March,* 1818, for one hundred dollars, to *Harker* and *Thorn:* That about a year afterwards, he was informed by *Harker* and *Thorn,* that this note, or order, was lost, and an arrangement was made by *Conrad* and *Lancaster, Harker* and *Thorn,* and himself, that the note for one hundred dollars, which had been lost, should be replaced, and an order given by *Moses Lancaster* on *Conrad* and *Lancaster,* as if the first note had been presented: That this arrangement was made, and the order given on the 26th of *February,* 1820: That *Conrad* and *Lancaster* knew nothing of the arrangement, so far as the witness knew, before that time: That on the same day, the witness gave *Harker* and *Thorn* another order on *Conrad* and *Lancaster,* for one hundred and thirty-seven dollars and twenty-six cents, being the amount he then owed them, for work they had done to his house in *Fourth* street, in the year 1817, for which they were to be paid in lumber: That *Conrad* and *Lancaster* knew of his arrangement with *Harker* and *Thorn,* but he did not know when they first became acquainted with it.

The defendant closed his evidence with the following receipt:

"Rec'd, 2d mo. 10th, 1819, of *Harker* and *Thorn,* three hundred dollars, in full for carpenters' work, done in *Walnut* street, between *Eleventh* and *Twelfth* streets.

*Samuel Copeland.*

$ 300.

(Hopkins *v.* Conrad and Lancaster.)

The plaintiffs then read in evidence to the jury two receipts, in these words:

" Rec'd, 7th mo. 3d, 1820, of *Harker* and *Thorn*, five hundred dollars, and their bond for three hundred and fourteen dollars and forty cents, dated the 1st inst., payable in one year, with interest; which, when the bond is paid, will be in full for lumber, delivered to two houses, in *Fourth* street.

*Conrad* and *Lancaster*.

$ 500 00 Cash.
   314 40 Bond.
——————
$814 40

" Rec'd, 2d mo. 26th, 1820, of *Harker* and *Thorn*, our order drawn in favour of *Moses Lancaster*, for sawed lumber, dated this day, for one hundred dollars; and also, *Moses Lancaster's* order on us, for one hundred and thirty-seven dollars and twenty-six cents, which is on account of lumber delivered for two houses in *Fourth* street, near *Callowhill* street.

*Conrad* and *Lancaster*.

$ 100 00
  137 26
——————
$ 237 26

*Samuel Copeland*, one of the witnesses who had been previously examined by the plaintiffs, was again called by them, and testified, that he had done all the work in the house in *Walnut* street, for *Harker* and *Thorn*, except the shelving of the vault, at the time he gave the receipt of *February* 10th, 1819: That he had previously agreed to do this shelving, and did it afterwards, with lumber got of the plaintiffs: That when he had finished the house, *Benjamin Harker* said, " I want you to finish the vault, as *Ware's* house (next door) is:"—That they went into *Ware's* house, and saw the vault:—That this conversation took place between the 1st and the 15th of *January*, 1819, while the witness was putting on the mahogany doors.

The evidence on both sides being closed, the judge delivered to the jury, the following

CHARGE:—" Two questions are made by the defendant's counsel.

" 1. Whether the claim has been so filed as to create a lien, or, in the language of Mr. *Hopkins*, ' whether such a claim has been filed, in point of law, as to furnish a lien.'

" 2. Whether the whole, or any part of the debt in question, has been paid?

" *First*, Was the claim filed within six months after the building was finished? Five or six witnesses have been examined by the defendant, who testify that the house was finished about *Christmas*, in the year 1818: the claim was not filed till *July* 1, 1819. *Cope-*

(Hopkins *v.* Conrad and Lancaster.)

*land,* the carpenter, says the building was not finished till *February,* 1819; that, while he was at work at the doors, *Harker* and *Thorn* contracted with him to finish the vault by making therein shelves like to those in the adjoining houses, which he did not finish till *February,* 1819; so that if the building was not finished till this work was done, the claim was filed in time. The determination of the Supreme Court confirmed the opinion of the late Judge McKEAN, on this part of the case. I will read it to you. [His Honour here read Judge McKEAN's charge, from 12 *Serg. & Rawle,* 302.]

" If you shall be of opinion upon the facts, that the claim was filed in time, viz. within six months after the building was finished, then, *Secondly,* Has the claim, or any part of it, been paid, or in any way satisfied, as respects the defendant?

" The defendant's counsel contend that an agreement existed between the plaintiffs and *Harker* and *Thorn,* by which *Harker* and *Thorn* were to receive notes of the plaintiffs, or orders from *Moses Lancaster* upon them, payable in lumber; which notes or orders the plaintiffs were to credit to this house: that such notes or orders were received by *Harker* and *Thorn,* but, contrary to the original agreement, appropriated to other accounts. Such an agreement, if it ever existed, was within the control of the parties, unless the rights of third persons intervened; there is, however, not one tittle of evidence, that any such agreement ever did exist. But, if the defendant has failed in proving the agreement, he nevertheless contends that he is entitled to a credit of one hundred dollars, the amount of the note of the 12th *March,* 1818. This note was virtually an accepted order drawn by *Moses Lancaster,* in favour of the holder, upon the plaintiffs. If *Harker* and *Thorn* had presented this note for payment, they would have been entitled to the amount in lumber; if they did not choose to present it, but preferred obtaining the lumber on their own credit, they might do so. Their possession of the note, or order, without the knowledge of the plaintiffs, was not payment, whether they would or not, of the lumber so purchased. The law is, that though *Harker* and *Thorn* were in possession of this note, or order, during the whole time that the lumber in question was purchased and delivered, they might nevertheless have afterwards presented it, and received lumber in payment of it, without affecting the plaintiffs' lien for the lumber in question. If you find the fact to be, that the plaintiffs did not know, at the time of furnishing the lumber, that the note or order of the 12th *March,* 1818, for one hundred dollars, had been transferred to *Harker* and *Thorn,* and also that the lumber was not furnished on the credit of the note or order, and in payment of it, but exclusively upon the credit of *Harker* and *Thorn,* then the note or order was not paid by the lumber so furnished, and the plaintiffs were not obliged, when they afterwards learned that *Harker* and *Thorn* had, during this time, been the owners of the note, to

(Hopkins *v.* Conrad and Lancaster.)

pass it to the credit of this account, but might pay it in other lumber, or pass it to the credit of different and subsequent accounts.

"The defendant has requested the charge of the court on four points of law.

"1. That the note of 12th *March*, 1818, signed by *Conrad* and *Lancaster*, in favour of *Moses Lancaster*, for one hundred dollars, payable in lumber, delivered 11th *July*, 1818, to *Harker* and *Thorn*, was not a negotiable note.

"To this I answer, that it is not a negotiable note; but a *bona fide* holder having the rightful possession, might sue the plaintiffs in a special action, or in the name of *Moses Lancaster*, and the right would pass by transfer from hand to hand. This, however, is not material; it is no part of the case. It is an answer to the question to say, that it is not strictly, and in a legal sense, a negotiable note.

"2. Not being a negotiable note, it remained the property of *Harker* and *Thorn* up to the 15th of *May*, 1819, when *H. Hopkins* purchased, notwithstanding its being mislaid by *Harker* and *Thorn*.

"*Ans.* I put the case, that the note remained in their possession, or undisposed of by them, and answer affirmatively, Yes.

"3. As *H. Hopkins* purchased on the 15th of *May*, 1819, and no transfer or change of appropriation of this order, was made by *Harker* and *Thorn* before that time, they could make none afterwards; if it was a payment before that time to its amount, as between *Conrad* and *Lancaster*, and *Harker* and *Thorn*, it so remains.

"To this I answer, you are to understand distinctly that though *Harker* and *Thorn* had the note in their possession, and were the owners of it, at the time they purchased the lumber, if they did not present the note to the plaintiffs, and obtain the lumber upon it, but the plaintiffs, being ignorant of the fact, furnished the lumber upon the credit of *Harker* and *Thorn*, then the plaintiffs' lien is in no way affected by the circumstance of the note, and it was no payment.

"4. That, if the shelving of the vault was not a part of the original plan of the building, but was directed to be put therein, one or two months after the building was finished, then the plaintiffs, by furnishing the lumber for that purpose, are not, by law, thereby entitled to a lien for all the lumber previously furnished, in erecting and constructing the building.

"*Ans.* To this I answer, no lien attaches for additions or repairs: this belongs to the first question in the case, and the law I have read from *Serg. & Rawle.*"

The following errors were assigned in this court:—

"1. The judge erred in rejecting the evidence of *Abia B. Thorn.*

"2. The judge erred in the charge given to the jury, viz. *First*, In referring it to the jury as a matter of fact, whether the house was finished, until shelves were put in the vault. *Second.* In the answer he gave to the third question, viz: "You are to understand distinctly that, though *Harker* and *Thorn* had the note in their

(Hopkins *v.* Conrad and Lancaster.)

possession, and were the owners of it, at the time they purchased the lumber, if they did not present the note to the plaintiffs and obtain the lumber upon it, but the plaintiffs being ignorant of the fact, furnished the lumber upon the credit of *Harker* and *Thorn*, then the plaintiffs' lien is in no way affected by the circumstance of the note, and it was no payment."

" 3. In the answer he gave to the fourth question, viz: " To this I answer—No lien attaches for additions or repairs; this belongs to the first question in the cause, and the law I have read from *Serg. & Rawle.*"

*H. Hopkins* and *T. Sergeant*, for the plaintiff in error:—

1. The rejection of *Thorn*, as a witness, was erroneous. He was not a party to the suit; was not served with process; did not plead, and the jury were sworn to try the issue between *Conrad* and *Lancaster*, and *Hopkins* alone. The *Scire Facias*, it is true, issued against *Harker* and *Thorn* and terretenants, but was only served on *Hopkins*, the terretenant, who derived title under *Thorn*. He was not interested, because he stood indifferent between the parties, being equally liable to each. To the defendant, he was liable on his warranty, in case of recovery by the plaintiffs; and to the plaintiffs he was liable on his contract, in the event of a failure to recover in this suit. The witness received no notice from the defendant to come in and defend, and no man is liable for the costs of a suit, which he has no notice to come in and defend. The verdict would not be evidence against *Thorn*. The warranty is the usual covenant of special warranty. In *Hamilton* v. *Cutts*, 4 *Mass. Rep.* 353, it is said, that a recovery, with notice, is conclusive evidence against the covenantor. If *Thorn* had received notice, he might have chosen to pay the money. In *Twamley* v. *Henry*, *Ib.* 441, it was held that the judgment in that suit could not be given in evidence against the warrantor, he being liable, whether a recovery took place or not. The possibility of being liable for costs, does not make a witness incompetent. *Phill. Ev.* 54, 55.

In covenant on a warranty, the measure of damages is not the loss actually sustained, but only the principal and interest of the debt. *Bender* v. *Fromberger.* 4 *Dall.* 436. Where an ejectment is brought against the vendee of lands, if notice be given to the warrantor, the record is conclusive evidence against him, in an action of covenant on the warranty. But, if the vendee omits to give notice, but appears and defends, he cannot recover his expenses, for he cannot subject his warrantor to more than he is liable for, on his covenant. *Fulweiler* v. *Baugher*, 15 *Serg. & Rawle*, 55.

2. On the 26th *February*, 1820, when the arrangement was made by *Conrad* and *Lancaster*, *Harker* and *Thorn*, and *Moses Lancaster*, the plaintiffs, might have had a lien on the *Fourth* street houses, if they had chosen to file their claim. They could have sustained no loss by passing the note to the credit of the *Walnut* street house. This they were bound to do, because, otherwise, the

(Hopkins v. Conrad and Lancaster.)

loss would be thrown on an innocent purchaser, without notice. Instead of this, they apply this debt, as it then .existed, to the *Fourth* street house; suffer their lien upon it to expire, and then, in *November*, 1820, sue out this *Scire Facias* against *Hopkins.* It is nothing that the lumber was not furnished on the credit of this note, nor that, until *February*, 1820, the plaintiffs did not know that it was in the hands of *Harker* and *Thorn.* *Harker* and *Thorn* knew all about it in *July*, 1820. · In *February*, 1820, the plaintiffs knew of it, and did not pass it to any other account, to the injury of the defendant. The note was not negotiable. Though lost, it was in. the hands of *Harker* and *Thorn* in payment of the plaintiffs' claim; the lumber for which it called having been received by *Harker* and *Thorn*, to the amount of one hundred dollars, in *July*, 1818. Mutual demands, subsisting at the same time, extinguish each other by operation of law, without actual defalcation by the parties. *Commonwealth* v. *Clarkson*, 1 *Rawle*, 291. As between themselves, parties may undoubtedly waive, or alter such discharge; but they cannot do so to the injury of a third person. To do as was done in this case, was a fraud upon the defendant. *Harker* v. *Conrad*, 12 *Serg. & Rawle*, 301, is in point as to the principle which governs this case.

*Dwight* and *Bradford*, for the defendants in error, who were directed by the court to confine their argument to the last point, said, that the plaintiffs below had furnished lumber for two sets of buildings, one in *Walnut* street, the other in *Fourth* street. The latter were begun in *April*, 1819, and finished in *March*, 1820. *Moses Lancaster* sold to *Conrad* and *Lancaster* a fifth house, to be paid for in orders. The plaintiffs below had no knowledge of *Harker* and *Thorn* having the order in question, until seven months after the claim was filed. The note was then transferred by delivery.

That the question of appropriation of money may arise, there must be actual payment. It can arise in no other case than payment in fact: it cannot arise on an exchange or barter. *Ingraham* v. *Hall*, 11 *Serg. & Rawle*, 83. *United States* v. *Kirkpatrick*, 9 *Wheat.* 737. · There must be two debts due from the debtor to the creditor, 11 *Serg. & Rawle*, 83. The debtor must intend an appropriation when the order is given. At what time the order in question was an actual payment, there is nothing to show. *Harker* and *Thorn*, for two years, intended it as a payment. Will the court regard it as a payment at any particular moment of that period, when they do not know where it now is, or whether or not it is lost? An appropriation, to be valid, must be compulsory and binding on both parties, which was not the case here, as *Harker* and *Thorn* had a right to transfer the order to whom they pleased.

Nor does a question of set-off arise in this case. The pleas are merely *non assumpsit* and payment. A set-off can only take place between debtor and creditor, and not between the creditor

(Hopkins *v.* Conrad and Lancaster.)

and a third person. The act of assembly speaks of mutual indebtedness.

Mr. *Hopkins* was not a purchaser without notice. There was enough to put him on inquiry, and he took care to guard himself by a warranty.

The opinion of the court was delivered by

HUSTON, J.—In order to understand this cause, and the reasons of our opinion, we must attend to dates as well as facts. *Harker* and *Thorn* were erecting a house in *Walnut* street in the year 1818. They got lumber from *Conrad* and *Lancaster* for this house, and the first charge is on the 23d of *June*, 1818. On the 11th of *July*, 1818, the price of the lumber delivered was less than one hundred dollars. On the 11th of *July*, 1818, *Moses Lancaster* assigned to *Harker* and *Thorn* a note, signed by *Conrad* and *Lancaster*, and dated the 18th of *March*, 1818, for one hundred dollars, payable in lumber. On this day, then, *Harker* and *Thorn* were the creditors, and *Conrad* and *Lancaster* were indebted to them; but *Conrad* and *Lancaster* continued to deliver more lumber, and soon became creditors. The house was finished about the last of *December;* or, as the jury have found, though I cannot see why, some time in *January*, 1819.

On *July* 1st, 1819, *Conrad* and *Lancaster* filed in the office of the District Court a claim for three hundred and thirty-four dollars and forty-four cents against *Harker* and *Thorn* for lumber furnished this house in *Walnut* street; and the dispute arose on the trial of an issue on the validity and amount of this mechanic's lien. The plaintiffs proved the delivery of the lumber, and there was contradictory proof about the time when the house was finished.

The defendant showed a title in *Abia B. Thorn*, and a deed from him to *H. Hopkins*, dated the 15th of *May*, 1819, and a deed from *H. Hopkins* to *J. R. Hopkins*, dated the 21st of *June*, 1819; and then proved by *Moses Lancaster*, that he transferred to *Harker* and *Thorn* the note for one hundred dollars, payable in lumber, above mentioned, on the 11th of *July*, 1818; and that about a year afterwards (that is, after the purchase of the defendant, and the filing of the claim for a lien,) he was informed by *Harker* and *Thorn* that the note was lost; and an arrangement was made by *Conrad* and *Lancaster*, *Harker* and *Thorn*, and himself, that the note for one hundred dollars which was lost should be replaced, and an order should be given by *Moses Lancaster* on *Conrad* and *Lancaster*, as if the first note had been presented. This arrangement was made, and the order given the 26th of *February*, 1820. *Conrad* and *Lancaster*, he says, knew nothing about these orders, so far as he knew, before that time. On the same day he gave *Harker* and *Thorn* another order on *Conrad* and *Lancaster* for one hundred and thirty-seven dollars and twenty-six cents, being a balance he owed *Harker* and *Thorn*. He afterwards says, *Conrad* and *Lan-*

*caster* knew of every arrangement with *Harker* and *Thorn,* but he does not know when they became acquainted with it; he never. heard them speak of being paid for the lumber for the *Walnut* street house by these orders, or of transferring them to the house in *Fourth* street.

*Harker* and *Thorn* built another house. in *Fourth* street, and got lumber for it from *Conrad* and *Lancaster.* Against this last house they filed no claim of lien. The first article of lumber for it was furnished the 24th of *April,* 1819, and several months after the first house was finished. *Conrad* and *Lancaster* wished to give credit for these two orders of *M. Lancaster* on the *Fourth* street house. *Hopkins* alleged he was entitled to credit for one or both of them on the house in *Walnut* street. This cause was tried before, and is reported in 12 *Serg. & Rawle,* 301; but the point in dispute, or rather the sum, was different; that related to a payment of five hundred dollars; this to the two orders of *M. Lancaster.* I refer to that case, for the general law, as to what debt, a payment made, and not appropriated at the time, shall be applied; and adopt the principle there stated as applicable to this matter, but much more strongly to these facts.

This cause has been ingeniously and well argued, except that the counsel of *Conrad* and *Lancaster* have relied on the *British* statutes of set-off, and not on our act about defalcations, which goes much further than the *British* statutes; a matter which every lawyer ought to keep constantly in view, and which the court generally recollect. There can be no question as to what debt a payment or a counter demand shall be applied to, unless the party has two demands payable at different times, or secured by different instruments; or, of which one, at least, is a lien on some fund, which another part of the debt does not bind.

On *July* 11th, 1818, *Conrad* and *Lancaster* had but one demand, and that for lumber furnished to the *Walnut* street house; it could become a lien on that house, but on no other property under the act creating a mechanic's lien. On that day *Harker* and *Thorn* became owners of a note payable in lumber by *Conrad* and *Lancaster* exceeding the price of lumber then furnished. The note was honestly due; admitted now to be due. The operation and effect of this state of things were, that *Conrad* and *Lancaster* could not by suit recover the price of the lumber furnished; nor could they. transfer to any other person a right to recover. it. *Harker* and *Thorn* could not recover on their note, except the balance; nor could they transfer to any other person a right to recover it. It was not a negotiable note: it was, to be sure, transferable, but would be subject in the hands of a third person to defalcation, to the amount of the claim of *Conrad* and *Lancaster* for lumber furnished; for, in *Pennsylvania,* where two persons have each, in their own right, whether strictly a legal or only an equitable right, demands against each other, due at the time, neither can transfer to a third person a

(Hopkins *v.* Conrad and Lancaster.)

right to recover more than the balance, unless the demand on one of them, is a negotiable note, and that note not over due.   This is so by express act of assembly, and decisions in every book of our reports; and it does not make the slightest difference that the party transferring, and he to whom it was transferred, did not know of the fact that there existed a cross demand.   It is so as to bonds; so as to notes, except those strictly negotiable; so as to book accounts; so in case of the insolvency of one of the parties, or in case of the death of the creditor party insolvent; his executors can recover only the balance. *Murray* v. *Williamson, 3 Binn.* 135.

This note then paid or extinguished its own amount of the price of the lumber furnished to the *Walnut* street house; and the lumber furnished to the *Walnut* street house extinguished this note long before any debt was contracted for the house in *Fourth* street. The parties were both bound by the law; by consent of both they could change this; neither could change it without the consent of the other.   They did, however, both consent to change it; but it was after the right of *J. R. Hopkins* had come in, and then it could not be changed for the reasons given at the former trial of this cause: it was illegal and unjust towards a third person; it was intended to relieve *Harker* and *Thorn,* and secure *Conrad* and *Lancaster,* by considering a note of the latter to the former unpaid, and transferring the credit for it to another fund, at the expense of a purchaser for a full and valuable consideration.

Let it be distinctly understood that I do not say this note for the one hundred dollars, payable in sawed timber, was a good defence to every demand of every kind which *Conrad* and *Lancaster* might have against the holder of the note; but it was a good defence to a demand by them for the price of the sawed timber furnished to those who held the note.   Our act about defalcation is the first legislative provision giving chancery powers to the common law courts.   It was intended to give the common law courts all the power which chancery had ever exercised over bond and other debts; to put an end to what had been said, that a demand was good at law, but would be relieved against in equity, and to do all at the trial of the cause, which a chancellor had been used to do afterwards; and it was intended to do, and has done more; it has prevented cross actions, wherever one will effect the ends of justice better.   It is a most beneficial law, and has never been complained of, except by those who think nothing good can be done on this side of the great water.

As to the other order, for the one hundred and thirty-seven dollars and twenty-six cents, we have not enough before us to give an opinion, further than that it must be decided on the principles laid down by this court on the former hearing, and this.   In a cause like this, where a paper is lost or found, or, perhaps, made at different trials, as may best tend to suit the interests of two parties who wish to af-

(Hopkins *v.* Conrad and Lancaster.)

fect a third party, we cannot conjecture what shape it would assume next time.

*Abia B. Thorn* was not a witness; he was directly bound by his warranty. This verdict and judgment would be evidence in the suit against him, for one purpose, if he had no notice; conclusive, if he had notice; and I do not see how a man, who was examined as a witness in a cause, could deny that he had notice, or what better proof of notice could be given.

Judgment reversed, and a *venire facias de novo* awarded.