**SEAGULL ENERGY E & P, INC., Petitioner,**

v.

**RAILROAD COMMISSION OF TEXAS, Respondent.**

No. 03–0364.

Supreme Court of Texas.

Argued Oct. 20, 2004.

Decided May 4, 2007.

Michael E. McElroy, Mickey R. Olmstead, Gregory S. Friend, McElroy, Sullivan, Ryan & Miller, L.L.P., Austin, for Petitioner.

Greg Abbott, Attorney General of Texas, Priscilla M. Hubenak, Karen Watson Kornell, Barry Ross McBee, Edward D. Burbach, Office of the Attorney General of Texas, Jeffrey S. Boyd, Thompson & Knight, LLP, Austin, for Respondent.

J. Bruce Bennett, Jeffery L. Hart, Cardwell, Hart & Bennett, LLP, Austin, pro se.

Rex H. White, Jr., Law Offices of Rex H. White, Jr., Austin, for Texas Independent Producers and Royalty Owners Association.

Dale Alexander, Senior Reservoir Engineer, Corpus Christi, for Esenjay Petroleum Corporation.

Dick Watt, Watt, Beckworth & Thompson, L.L.P., Houston, pro se.

Benjamin W. Sebree, Vice President for Governmental Affairs, Jamie Nielson, Texas Oil & Gas Association, Austin, for Texas Oil and Gas Association.

Justice MEDINA delivered the opinion of the Court.

In this case we must decide whether the statute that grants the Railroad Commission authority to regulate production of commingled[1] oil and/or gas deposits includes the authority to regulate drilling, and if so, whether the Railroad Commission may consider the commingled deposits as though they were one reservoir when regulating drilling and production in the commingled field. The court of appeals held that the Railroad Commission could consider the commingled deposits as one reservoir when determining correlative rights and could deny an exception to the well-spacing requirements prescribed by the field rules absent proof of confiscation as to the commingled reservoir as a whole. 99 S.W.3d 232. Although raised by the operator, the court did not address the constitutional implications of its decision. We conclude that the Railroad Commission has authority to regulate both drilling and production in a commingled field. We further conclude that the Railroad Commission's treatment of the commingled gas as a common reservoir does not violate vested property rights. Accordingly, we affirm the court of appeals' judgment.

## I

Seagull Energy E & P, Inc. holds the 115.64 acre Albert Davis Lease in the Waskom (Cotton Valley) Field. This field is comprised of several discontinuous,[2] len-

---

1. Down-hole commingling occurs when one or more otherwise separate strata or accumulations of hydrocarbons are simultaneously produced through the same string of pipe in the well bore.

2. When sands are discontinuous it is difficult to correlate the distinct zones throughout the area, meaning that a producer may be able to complete a well into a particular sand that its adjacent neighbors cannot and vice-versa. In the Waskom (Cotton Valley) Field, twelve of these sands have been identified. The Commission has commingled these sands, and a producer may complete a well in any number of sands found on its property.

ticular[3] gas sands.[4] Beneath Seagull's lease there are three vertically separate sands, the "Stroud", the "C", and the "Taylor." Because the Waskom (Cotton Valley) Field is in pressure communication through drilling, the Railroad Commission regulates the field as though the sands were a single common reservoir.

Seagull completed its first well into the C Sand ("Well No. 1") in 1991 and produced gas until June 2000. In 2000, Seagull was granted a permit from the Commission to complete a new well ("Well No. 4") in all three sands. Because concurrent production from both wells violates the field rules[5], Seagull shut-in Well No. 1 before producing from the new well. Well No. 4 was successfully completed in the Stroud and Taylor sands, but not the C

sand. Seagull therefore sought an exception permit to reopen Well No. 1 so it could produce from the C sand.

The Commission, however, denied the permit. Treating the commingled sands as a common reservoir, the Commission concluded that Seagull was not entitled to an exception from field rules because it had not shown confiscation. Seagull appealed, but the district court agreed with the Commission and affirmed its decision. The court of appeals also affirmed, 99 S.W.3d 232, and Seagull petitioned for our review.

## II

Section 86.081(b) of the Texas Natural Resources Code, one of the statutes authorizing the Commission to regulate commin-

**3.** A "lenticular" deposit is irregularly shaped and "often small, but completely saturated with oil or gas." *See* 8 HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 553 (2006).

**4.** "Sand" is short for "sandstone" which is a type of sedimentary rock that holds oil and gas within its pores. 8 HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 645 (2006). In oil and gas usage, an underground area known to contain oil or gas or both is loosely referred to as a sand. A "reservoir" is an underground formation favorable to the accumulation of oil and gas and in which oil or gas or both are trapped. *Amarillo Oil Co. v. Energy–Agri Products, Inc.*, 794 S.W.2d 20, 23 (Tex.1990). A sand is not necessarily a single reservoir as separate sands may be connected at some point and thus be referred to as one reservoir. *See, e.g., R.R. Comm'n v. Mackhank*, 186 S.W.2d 351, 353 (Tex.Civ.App.-Austin), *rev'd on other grounds*, 144 Tex. 393, 190 S.W.2d 802 (1945). In many instances, however, a sand is treated as a separate reservoir. *See, e.g., R.R. Comm'n v. Aluminum Co. of Am.*, 380 S.W.2d 599, 600 (Tex.1964); *State Line Oil & Gas Co. v. Thomas*, 35 S.W.2d 746, 747 (Tex. Civ.App.-Texarkana 1931, writ dism'd); *Chapman v. Ellis*, 254 S.W. 615, 619 (Tex.Civ.App.-Beaumont 1923, writ dism'd). The evidence in this case is that the three sands do not naturally communicate with each other but

are treated as one reservoir because the Commission has authorized commingled production. *See, e.g., R.R. Comm'n v. Gardner*, 338 S.W.2d 753, 758 (Tex.Civ.App.-Austin 1960, writ ref'd n.r.e.) (refusing to treat sands as separate reservoirs where the Railroad Commission's jurisdiction had not been invoked for this purpose).

**5.** The Waskom (Cotton Valley) field rules require one well for 80 acres and at least 1,320 feet from the nearest well completed in or drilling to the same reservoir on the same lease. Tex.R.R. Comm'n, *Application of Arkla Exploration Company, Sonat Exploration Company and Winchester Production Company for Amendment to the Field Rules in the Waskom (Cotton Valley) Field, Harrison County, Texas*, Docket No. 6–96, 658 (Oil and Gas Div. Sep. 24, 1991) (final order granting application) ("1991 Field Rules"). Tex.R.R. Comm'n, *Application of Winchester Oil Company for Consolidation of the Waskom (Cotton Valley) and (Cotton Valley, Lo.) Fields, Harrison County, Texas*, Docket No. 6–78, 845 (Oil and Gas Div. Jan. 31, 1983) (final order granting application) ("1983 Field Rules"); 2 R. 316–29. Seagull needed an exception permit because it does not have sufficient acreage to support two wells, and its two wells are only 1,200 feet apart.

gled oil and/or gas production, has been amended since this case began.[6] It formerly provided:

> When as provided in Subsection (b) of Section 85.046 or Subsection (b) of Section 86.012 of this code, as amended, the commission has permitted production by commingling oil or gas or oil and gas from multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas, the commission may prorate, allocate, and regulate the production of such commingled, separate multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas as if they were a single common reservoir....

Act of June 16, 1981, 67th Leg., R.S., ch 688, §§ 1–3, 1981 Tex. Gen. Laws 2578, 2578–80. Seagull submits that in the natural order of things it must first obtain a drilling permit, and then a production permit, and that the above statute authorizes the Commission to regulate the production of commingled oil and gas, but not drilling. Seagull argues then that the permit to reopen Well No. 1 was, in fact, a drilling permit, and not a production permit, and that the Commission therefore lacked authority to deny it.

The Commission agrees that a producer must first obtain a drilling permit, and then a production permit, but submits that Seagull already has two drilling permits and seeks only to amend its permit for Well No. 1 so that it can produce from it simultaneously with Well No. 4. The court of appeals agreed, concluding that because Well No. 1 had previously been permitted, Seagull was not seeking a drilling permit, but a production permit. 99 S.W.3d at 241 n. 12.

■ We agree with the court of appeals that what is ultimately at issue here is Seagull's right to produce from both wells at the same time. But even were we to agree with Seagull that its request was technically a request for a drilling permit, rather than a production permit, we would still not agree that the Commission lacked authority to consider that request. We have previously determined that section 86.081(b) was intended to grant the Commission broad authority over gas production from commingled deposits. *R.R. Comm'n v. Pend Oreille Oil & Gas Co.,* 817 S.W.2d 36, 46 (Tex.1991) (interpreting the statute to determine its effect on the Commission's pooling authority). In *Pend Oreille,* we traced the history of the commingling statutes,[7] as well as the circumstances that prompted their enactment, and concluded that the Legislature intended for the Commission to have broad discretion in regulating commingled oil and gas. *Id.* at 44–48.

6. This statute has been amended effective September 1, 2005 to provide:

> When, as provided in Subsection (b) of Section 85.046 or Subsection (b) of Section 86.012[], the commission has permitted production by commingling oil or gas or oil and gas from multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas, the commission may *regulate all activities that are under its jurisdiction and associated with* [] such commingled, separate multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas as if *the accumulations* [] were a single common reservoir....

Act of June 18, 2005, 79th Leg., R.S., ch. 1119, § 1, 2005 Tex. Gen. Laws 3703.

7. The commingling statutes include Texas Natural Resources Code Sections 85.046, 85.053, 85.055, 86.012 and 86.081. Act of ·May 29, 1979, 66th Leg., R.S., ch. 300, §§ 1 & 2, 1979 Tex. Gen. Laws 673, 673–75 (codified at Tex. Nat. Res.Code §§ 85.046, 86.012); Act of June 16, 1981, 67th Leg., R.S., ch. 688, §§ 1–3, 1981 Tex. Gen. Laws 2578, 2578–80 (codified at Tex. Nat. Res.Code §§ 85.053, .055, 86.081).

■ Were there any remaining doubt about the scope of the Commission's authority here, it was put to rest when the 79th Legislature amended section 86.081(b) to provide that "the commission may regulate all activities that are under its jurisdiction and associated with such commingled, separate multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas as if the accumulations were a single common reservoir." Act of June 18, 2005, 79th Leg., R.S., ch. 1119, § 1, 2005 Tex. Gen. Laws 3703 (now codified at TEX. NAT. RES.CODE § 86.081(b)). The legislative history indicates that the amendment was intended to clarify the Commission's authority and was prompted by this very litigation, challenging the Commission's authority to regulate "the placement and number of wells in fields where commingling is authorized." Bill Analysis, Senate Research Center, HB 2440, 5/16/05, Nat. Resources; *see also* Bill Analysis, House Research Organization, 4/21/2005, HB 2440 ("A case pending before the Texas Supreme Court, *Seagull Energy E & P, Inc. v. RRC,* challenges the RRC's authority to treat multiple separate reservoirs as one common reservoir. The plaintiff-operator disputes the RRC's authority to regulate the placement and number of wells in fields where commingling is approved."). We conclude that the regulation at issue here was within the scope of that authority delegated to the Commission by the Legislature.

### III

■ Seagull also complains that the Commission's order, as applied to it, is unconstitutional because it amounts to a taking of its gas in the C Sand. Seagull submits that it has a vested property right in each separate gas deposit underlying its land and that the Commission's denial of a permit to complete a well in the C Sand deprives it of this right. Furthermore, Seagull contends that the Commission's actions here are arbitrary because the Commission has denied it access to some of the gas under its property simply by designating the separate sands as a common reservoir.

The Commission responds that there has been no taking here because the three gas deposits on Seagull's lease have been commingled into one common reservoir in which Seagull has a well and from which Seagull has not shown confiscation. The Commission submits that when commingled production has been authorized, confiscation must be shown from the common reservoir as a whole rather than from an individual, commingled sand.[8] Thus, the Commission sought proof that production from Well No. 4 would fall short of the current reserves remaining under Seagull's property.

We must decide then whether a mineral owner's property right to commingled oil or gas or both extends separately to each commingled deposit or collectively to the commingled whole. The courts below have sided with the Commission, concluding that because Seagull failed to demonstrate that concurrent production was needed to prevent drainage as to the common reservoir, it failed to carry its burden. The

---

8. The Commission also submits that, as a practical matter, it has not denied Seagull the opportunity to produce gas from the C Sand, only the right to produce simultaneously from both wells. Because Well No. 1 is still a permitted well, albeit currently shut-in to allow Well No. 4 to produce, the Commission states that Seagull can, without further action by the Commission, shut-in Well No. 4 and produce from Well No. 1, if it desires. The field rules only prevent these wells from producing concurrently because of the size of the lease and the wells proximity to one another.

trial court summed up its reasoning in the following letter that accompanied its order:

> [T]he case turns on Seagull's inability to show that the one well will not allow it to recover its fair share of the field. Assuming Seagull recovers its fair share of the field, it does not need the second well and nothing has been wasted or confiscated.
>
> * * *
>
> The field in question consists of commingled separate multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas. Under the law the Commission may "distribute, prorate, apportion, or allocate the production of such commingled separate multiple stratigraphic or lenticular accumulations of oil or gas or oil and gas *as if they were a single pool.*" TEX. NAT. RES.CODE § 85.053(b) (2002). Statewide Rules 37 and 38 do just that. Each mineral interest owner is entitled to produce its "fair share" from the pool, meaning an amount equal to the reserves beneath the surface of their interest. Seagull has not established that its one producing well is inadequate to produce its fair share and therefore it needs two producing wells. Case closed.

(emphasis in original).

Seagull contends, however, that it is entitled to a first well in each separate sand on its property, whether commingled or not, and that our decision in *Benz–Stoddard v. Aluminum Company of America*, 368 S.W.2d 94 (Tex.1963), supports that view. In *Benz–Stoddard*, we upheld a commission order, allowing a small-tract owner to complete a well into several vertically separated strata, even though one completion alone would have allowed the owner to recover an amount of gas in excess of that under her property. 368 S.W.2d at 97–98. We concluded that because the Commission was authorized to treat each completion in a separate reservoir as a separate well, it could permit an operator to complete multiple first wells through a single well bore if necessary to prevent confiscation. *Id.* at 99. The Commission, we said, could prevent unfairness to adjacent producers by regulating allowable production. But we did not say that this was the only way to regulate such situations. *Id.* at 97–98. We noted that the applicable statute [9] then contemplated "that the Railroad Commission will treat reservoirs of gas underlying the same tract of land separately ... [and authorized the Commission] to treat a completion in each reservoir as a 'first well.'" *Id.* at 97–98. The statutes at the time did not recognize commingled production. Since our decision in *Benz–Stoddard*, the Commission's authority has been expanded to provide for commingling and the regulation of commingled strata as if they were a common reservoir. TEX. NAT. RES.CODE § 86.081(b). Therefore, where, as here, the Commission has commingled production from separate strata, treating them as though they were one common reservoir, *Benz–Stoddard* does not require that the Commission's field rules be applied separately to each commingled strata.

▮ Although a mineral owner has a right to its fair share of the minerals on and under its property, this right does not

---

**9.** "If oil and/or gas be produced through different strings of casing set in the same well bore, the inner string through which oil and/or gas be produced shall be regarded as one well, and each successive additional string of casing through which oil and/or gas shall be produced, from a different producing horizon, the others producing through the same well bore, shall be regarded as another well." *Benz–Stoddard*, 368 S.W.2d at 97–98 (quoting article 6008 of the revised civil statutes, now codified as § 86.003 of the Natural Resources Code).

extend to specific oil and gas beneath the property. *R.R. Comm'n v. Gulf Prod. Co.*, 134 Tex. 122, 132 S.W.2d 254, 255 (1939) (owner entitled to a fair chance to oil and gas under its land, or its equivalents in kind). Moreover, a mineral owner's rights to oil and gas in place under its land is subject to the state's police power to conserve and develop the state's natural resources. TEX. CONST. art XVI, § 59(a); *Brown v. Humble Oil Co.*, 126 Tex. 296, 83 S.W.2d 935, 944 (1935). "As we have said, 'all property is held subject to the valid exercise of the police power' and thus not every regulation is a compensable taking, although some are." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 670 (Tex.2004) (quoting *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex.1984)). Pursuant to this power, rule-making authority has been delegated to the Commission to further the state's goals of preventing waste and conserving natural resources. TEX. NAT. RES. CODE § 85.201. The Commission, in turn, has promulgated statewide rules for this purpose, and, in some areas, it has replaced the statewide rules with more specific field[10] rules where necessary to prevent waste or confiscation. *Gulf Land Co. v. Atl. Ref. Co.*, 134 Tex. 59, 131 S.W.2d 73, 80 (1939); 16 TEX. ADMIN. CODE §§ 3.37(a), 3.38(b) (2005) (Tex.R.R. Comm'n, Statewide Spacing Rule; Well Densities).

Seagull, however, accuses the Commission of using its authority to commingle here in an arbitrary manner to deprive it of its interest in the C Sand. But before the Commission will consolidate or commingle production in a field, an operator must request that it be done, and all affected operators must be served with notice. *See* 16 TEX. ADMIN. CODE § 3.10 (Tex. R.R. Comm'n, Restriction of Production of Oil and Gas from Different Strata); RAILROAD COMMISSION OF TEXAS, TEXAS OIL AND GAS: DISCUSSIONS OF LAW, PRACTICE AND PROCEDURE 13–14 (1983). Following such a request, an adversarial hearing is conducted at which the Commission must determine that commingled production will prevent waste, promote conservation, or protect correlative rights. TEX. NAT. RES. CODE § 86.012(b). Once commingled, the Commission is authorized to regulate all activities associated with such commingled accumulations in order to protect correlative rights. TEX. NAT. RES.CODE § 86.081.

In 1985, the Commission heard evidence that the Waskom (Cotton Valley) Field was composed of discontinuous, lenticular sands throughout the formation and that a well drilled in the field might encounter anywhere from one to twelve of these sands. Based on these physical conditions, the Commission adopted special field rules allowing operators to produce as many of the commingled sands[11] as possible in one well bore and further designated the optimal well spacing requirements for draining the commingled reservoir and maximizing the recovery of hydrocarbons. These rules have been in place for the Waskom (Cotton Valley) Field for over twenty years and apply equally to all operators in the field. *See Marrs v. R.R. Comm'n*, 142

---

10. *See* 16 TEX. ADMIN. CODE § 3.37(d); "The word 'field' as used in the oil industry has a meaning which is usually determined from the context in which it is used. It may refer to a certain geographical area from which oil is produced or it may be restricted to a particular reservoir." *R.R. Comm'n v. Rio Grande Valley Gas Co.*, 405 S.W.2d 304, 309 (Tex. 1966).

11. Commingling is beneficial to operators in some fields because it extends the productive life of sands that are too small to justify separate wells or whose pressure is too low to support extraction. *See* Frank Douglass & H. Phillip Whitworth, Jr., *Practice Before the Oil and Gas Division of the Railroad Commission of Texas*, 13 ST. MARY's L.J. 719, 733 (1982).

Tex. 293, 177 S.W.2d 941, 949 (1944) ("Commission cannot indulge in unjust, unreasonable, or arbitrary discrimination between ... different owners in the same field"); *see also R.R. Comm'n v. Manziel,* 361 S.W.2d 560, 572 (Tex.1962) (the rules, orders and regulations issued pursuant to the Commission's police power may invade "the right of the owner of the land to the oil in place under his land as long as it is based on some justifying occasion, and is not exercised in an unreasonable or arbitrary manner."). Since the consolidation and adoption of these rules, apparently no operator has ever requested that any of the sands be designated as separate; nor does Seagull seek such treatment for the C sand in this proceeding.

The record therefore does not support Seagull's charge that the Commission has applied its authority to commingle oil and/or gas in an arbitrary manner, or that, under this record, its failure to grant an exception to the field rules is confiscatory. Because Seagull failed to demonstrate that concurrent production from both wells was needed to prevent drainage as to the common reservoir, we agree with the courts below that Seagull has not carried its burden.

The judgment of the court of appeals is affirmed.